UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

FILED
DISTRICT COURT CLERK
WESTERN DISTRICT OF KY

2017 MAR -8 AM 11: 24

UNITED STATES OF AMERICA

v.

**CLAY SHELTON**

SECOND SUPERSEDING INDICTMENT

NO.  1:15-CR-00023-GNS
15 U.S.C. § 78j(b)
15 U.S.C. § 78ff
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 981(a)(1)
18 U.S.C. § 1343
18 U.S.C. § 1957
28 U.S.C. § 2461

The Grand Jury charges:

COUNTS 1 - 3

(Wire Fraud)

From in or about March 2011 through in or about September 2012, in the Western District of Kentucky, Warren County, and elsewhere, **CLAY SHELTON**, the defendant, devised a scheme to obtain money by means of false or fraudulent pretenses, representations, or promises from multiple investors, and for the purpose of executing said scheme, did knowingly transmit and cause to be transmitted wire communications in interstate commerce, to wit:

The Scheme

1. At all times relevant, **CLAY SHELTON** owned and operated U.S. Energy Partners, Inc. (U.S. Energy) in Bowling Green, Kentucky. U.S. Energy operated as the managing partner of oil and gas partnerships operated by **CLAY SHELTON** in Kentucky and Tennessee. The partners were made up of investors solicited by **CLAY SHELTON**.

2. At all times relevant, **CLAY SHELTON** operated Escrow 2011 LP (Escrow 2011). **CLAY SHELTON** created The Monterey Pipeline Partners, Inc. purportedly to purchase the

Monterey Pipeline gas pipeline in Tennessee. Escrow 2011 was an investment partnership created by **CLAY SHELTON** to fund an escrow account to purchase and operate the Monterey Pipeline.

3. At all times relevant, **CLAY SHELTON** operated Brakaw Energy Management LLC (Brakaw). Brakaw was operated by **CLAY SHELTON** and was purportedly created to manage and operate the Monterey Pipeline when he completed the purchase.

4. From March 2011 through September 2012 **CLAY SHELTON** solicited $1,370,000 from eleven investors for the purchase of the Monterey Pipeline. He fraudulently represented to the investors that their funds would be held in escrow as a down payment until he was able to complete financing to purchase the Monterey Pipeline. He provided investors with a Private Placement Memorandum (PPM) for Escrow 2011 in which he offered the investment into the partnership. The offering stated that a total of $1,500,000 was to be raised as down payment for the financing. This amount would be 10% of the amount he needed for the closing of a $10,000,000 to $15,000,000 loan from an unnamed financial intuition to purchase the Monterey Pipeline. The funds from the loan, according to representations by **CLAY SHELTON,** were to purchase the existing pipeline for $2,000,000 and the remainder was to develop and operate the pipeline.

5. **CLAY SHELTON** advised the investors that the pipeline would produce revenues by charging gas well owners a transmission fee to transmit gas from their wells. Each investor was promised that they would receive their investment back as soon as the funding from the financial institution was completed. **CLAY SHELTON** stated to the investors that the loan would be closed in 30 to 60 days and in the interim the funds would be held in escrow. Once the loan closed, investors would receive either a 25 percent return on their investment or Monterey Pipeline would buy their interest in any Tennessee well program they previously purchased through U.S.

Energy Partners. Investors were, therefore, assured they would receive their investment back in at least 60 days.

6. **CLAY SHELTON** received $1,370,000 from 11 investors from March 2011 through September 2012 that was purportedly intended for Escrow 2011 and the purchase of the Monterey Pipeline. **CLAY SHELTON** deposited $1,125,000 into the Escrow 2011 bank account at American Bank & Trust (A.B.&T.). The remaining $245,000 was deposited into the Monterey Pipeline Partners LLC bank account at A.B.&T.

7. **CLAY SHELTON** misappropriated $1,000,000 of investor funds deposited into Escrow 2011 by wiring the funds to J.M.R. in September and August of 2011. J.M.R. then purportedly used the majority of the $1,000,000 to invest in collateralized mortgage obligations.

8. **CLAY SHELTON** misappropriated the remaining $125,000 of investor funds deposited into the Escrow 2011 bank account by transferring the funds to U.S. Energy Partners bank accounts and then used the funds to pay operating and business expenses of U.S. Energy Partners.

9. **CLAY SHELTON** further misappropriated the $245,000 of investor funds initially deposited into the Monterey Pipeline Partners LLC's A.B.&T. account in the following manner:

  A. $77,500 was transferred to U.S. Energy Partners for operating and business expenses;

  B. $100,000 was transferred to Brakaw to pay operating and business expenses, including payroll; and

  C. The remaining $67,500 was used for cash and to pay miscellaneous expenses.

10. On December 15, 2011, J.M.R. transferred $425,000 to a Legacy Investments LLC bank account controlled by **CLAY SHELTON**. **CLAY SHELTON** used $125,000 of these funds to pay back Escrow 2011 investors A.&M.T. and C.S. The remaining $300,000 was transferred to U.S. Energy Partners and Brakaw Energy Management bank accounts to pay operating and business expenses.

11. The PPM provided to investors by **CLAY SHELTON** contained false information in that it misrepresented the following:

    A. That the invested funds would be held in safe escrow and that the entire investment would be returned in at least 60 days;

    B. That the financing package for the purchase of the pipeline had been pre-approved through an unnamed financial institution and that 10% of the loan amount must be escrowed before the funds could be dispersed;

    C. That 100% of the invested funds would be held in escrow and that none of the funds would be used for organizational costs, management fees, or administrative overhead costs; and

    D. That in the event the financing was not completed for any reason then each investor would receive their original investment back.

## The Wires

12. In the course of and for the purpose of executing the scheme detailed above, **CLAY SHELTON** caused the following interstate wire transmissions:

| Ct | Date | Interstate Wire Transmission |
|---|---|---|
| 1 | 8/17/2011 | Wire transfer of $800,000 from the Bowling Green, Kentucky, AB&T bank account of Escrow 2011 to the Texas HSBC bank account of J.M.R. |

| 2 | 9/2/2011 | Wire transfer of $200,000 from the Bowling Green, Kentucky, AB&T bank account of Escrow 2011 to the Texas HSBC bank account of J.M.R. |
| 3 | 12/15/2011 | Wire transfer of $425,000 from the Texas Bank account of J.M.R. to the Bowling Green, Kentucky, AB&T bank account of Legacy Investment. |

In violation of Title 18, United States Code, Section 1343.

The Grand Jury further charges:

## COUNT 4
### (Money Laundering)

On or about August 17, 2011, in the Western District of Kentucky, Warren County, and elsewhere, **CLAY SHELTON**, the defendant, did knowingly engage in a monetary transaction in criminally derived property of a value greater than $10,000 and that was derived from specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. § 1343, to wit, on August 17, 2011, **CLAY SHELTON** wire transferred $800,000 from his Escrow 2011 LP A.B.&T. account #33018301 in Bowling Green, Kentucky to J.M.R.'s HSBC account #725-25149-2 in Stephensville, Texas.

In violation of Title 18, United States Code, Section 1957.

The Grand Jury further charges:

## COUNT 5
### (Money Laundering)

On or about September 2, 2011, in the Western District of Kentucky, Warren County, and elsewhere, **CLAY SHELTON**, the defendant, did knowingly engage in a monetary transaction in criminally derived property of a value greater than $10,000 and that was derived from specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. § 1343, to wit, on September 2, 2011,

CLAY SHELTON wire transferred $200,000 from his Escrow 2011 LP A.B.&T. account #33018301 in Bowling Green, Kentucky to J.M.R.'s HSBC account #25-25149-2 in Stephensville, Texas.

In violation of Title 18, United States Code, Section 1957.

The Grand Jury further charges:

### COUNT 6
(Money Laundering)

On or about March 24, 2011, in the Western District of Kentucky, Warren County, and elsewhere, CLAY SHELTON, the defendant, did knowingly engage in a monetary transaction in criminally derived property of a value greater than $10,000 and that was derived from specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. § 1343, to wit, on March 24, 2011, CLAY SHELTON wrote check #501 for $100,000 from his Monterey Pipeline Partners LLC A.B.&T. bank account #32946601 to Brakaw Energy Management LLC South Central Bank account #6300113611.

In violation of Title 18, United States Code, Section 1957.

The Grand Jury further charges:

### COUNT 7
(Money Laundering)

On or about September 25, 2012, in the Western District of Kentucky, Warren County, and elsewhere, CLAY SHELTON, the defendant, did knowingly engage in a monetary transaction in criminally derived property of a value greater than $10,000 and that was derived from specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. § 1343, to wit, on September 25,

2012, **CLAY SHELTON** wire transferred $25,000 from his Monterey Pipeline Partners LLC A.B.&T. account #32946601 to Alternative Investment Partners, Inc. BMO Bank of Montreal account #00022-001-4777702.

In violation of Title 18, United States Code, Section 1957.

The Grand Jury further charges:

## COUNT 8
(Money Laundering)

On or about December 16, 2011, in the Western District of Kentucky, Warren County, and elsewhere, **CLAY SHELTON**, the defendant, did knowingly engage in a monetary transaction in criminally derived property of a value greater than $10,000 and that was derived from specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. § 1343, to wit, on December 16, 2011, **CLAY SHELTON** wire transferred $25,000 from his Legacy Investments LLC A.B.&T. bank account #33077901 to C.M.'s US Bank account # 145803082372.

In violation of Title 18, United States Code, Section 1957.

The Grand Jury further charges:

## COUNT 9
(Money Laundering)

On or about December 15, 2011, in the Western District of Kentucky, Warren County, and elsewhere, **CLAY SHELTON**, the defendant, did knowingly engage in a monetary transaction in criminally derived property of a value greater than $10,000 and that was derived from specified unlawful activity, that is wire fraud, in violation of 18 U.S.C. § 1343, to wit, on December 15,

2011, J.M.R. wire transferred $425,000 from The J.M.R. Investment Trust Texas Bank account to **CLAY SHELTON's** Legacy Investments LLC A.B.&T. account #33077901.

In violation of Title 18, United States Code, Section 1957.

The Grand Jury further charges:

COUNTS 10-28<br>(Securities Fraud)

From in or about July 2011 through September 2012 in the Western District of Kentucky, Warren County, and elsewhere, **CLAY SHELTON**, the defendant, willfully and knowingly, directly and indirectly, in connection with the sale of securities, by use of the means and instrumentalities of interstate commerce, and the mails, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240, 10b-5, by (a) employing devices, schemes, and artifices to defraud: (b) making untrue statements of material facts, and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons as charged in Counts 1 through 3 of this Superseding Indictment during the sale of the following securities:

| Count | Date of Investment | Investor | Amount of Investment |
|---|---|---|---|
| 10 | 8/5/2011 | J.H. | $50,000 |
| 11 | 8/10/2011 | J.D. & C.D. | $50,000 |
| 12 | 8/10/2011 | C.S. | $50,000 |

| Count | Date of Investment | Investor | Amount of Investment |
|---|---|---|---|
| 13 | 8/10/2011 | K.D. | $100,000 |
| 14 | 7/12/2011 | K.D. | $200,000 |
| 15 | 8/24/2011 | K.D. | $200,000 |
| 16 | 7/20/2011 | D.D. | $50,000 |
| 17 | 3/3/2011 | D.W. | $100,000 |
| 18 | 8/2/2011 | D.W. | $50,000 |
| 19 | 8/10/2011 | D.W. | $50,000 |
| 20 | 3/11/2011 | D.H. | $95,000 |
| 21 | 8/12/2011 | D.H. | $50,000 |
| 22 | 7/13/2011 | O.H. | $100,000 |
| 23 | 7/13/2011 | O.H. | $75,000 |
| 24 | 7/13/2011 | O.H. | $25,000 |
| 25 | 8/17/2011 | M. & A.T. | $50,000 |
| 26 | 9/10/2012 | M. & A.T. | $25,000 |
| 27 | 7/21/2011 | F.S. | $25,000 |
| 28 | 9/24/2012 | S.S. | $25,000 |

In violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10-b5.

## NOTICE OF FORFEITURE

If convicted of any violation of Title 18, United States Code, Sections 1343 or 1957, **CLAY SHELTON**, the defendant, shall forfeit to the United States any property constituting or derived

from any proceeds obtained, directly or indirectly, as the result of any such violation, and any property used or intended to be used, in any manner or part, to commit or to facilitate the commission of such violations.

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), and Title 28, United States Code, Section 2461.

A TRUE BILL.

REDACTED

_____
JOHN E. KUHN, JR.
UNITED STATES ATTORNEY

JEK:BRC: 2/24/2017

UNITED STATES OF AMERICA v. CLAY SHELTON

### PENALTIES

Counts 1-3:     NM 20 yrs./$250,000 /both/NM 3 yrs. Supervised Release (each count)
Counts 4-9:     NM 10 yrs./$250,000 /both/NM 3 yrs. Supervised Release (each count)
Counts 10-28:   NM 20 yrs./$5,000,000 /both/NM 3 yrs. Supervised Release (each count)
Forfeiture

### NOTICE

**ANY PERSON CONVICTED OF AN OFFENSE AGAINST THE UNITED STATES SHALL BE SUBJECT TO SPECIAL ASSESSMENTS, FINES, RESTITUTION & COSTS.**

SPECIAL ASSESSMENTS

18 U.S.C. § 3013 requires that a special assessment shall be imposed for each count of a conviction of offenses committed after November 11, 1984, as follows:

| | | | |
|---|---|---|---|
| Misdemeanor: | $ 25 per count/individual<br>$125 per count/other | Felony: | $100 per count/individual<br>$400 per count/other |

FINES

In addition to any of the above assessments, you may also be sentenced to pay a fine. Such fine is due <u>immediately</u> unless the court issues an order requiring payment by a date certain or sets out an installment schedule. You shall provide the United States Attorney's Office with a current mailing address for the entire period that any part of the fine remains unpaid, or you may be held in contempt of court. 18 U.S.C. § 3571, 3572, 3611, 3612

**Failure to pay fine as ordered may subject you to the following**:

1. **INTEREST** and **PENALTIES** as applicable by law according to last date of offense.

    For offenses occurring after December 12, 1987:

    No **INTEREST** will accrue on fines under $2,500.00.

    **INTEREST** will accrue according to the Federal Civil Post-Judgment Interest Rate in effect at the time of sentencing. This rate changes monthly. Interest accrues from the first business day following the two week period after the date a fine is imposed.

    **PENALTIES** of:

    10% of fine balance if payment more than 30 days late.

    15% of fine balance if payment more than 90 days late.

2. Recordation of a **LIEN** shall have the same force and effect as a tax lien.

3. Continuous **GARNISHMENT** may apply until your fine is paid.

18 U.S.C. §§ 3612, 3613

   If you **WILLFULLY** refuse to pay your fine, you shall be subject to an **ADDITIONAL FINE** of not more than the greater of $10,000 or twice the unpaid balance of the fine; or **IMPRISONMENT** for not more than 1 year or both. 18 U.S.C. § 3615

RESTITUTION

If you are convicted of an offense under Title 18, U.S.C., or under certain air piracy offenses, you may also be ordered to make restitution to any victim of the offense, in addition to, or in lieu of any other penalty authorized by law. 18 U.S.C. § 3663

APPEAL

If you appeal your conviction and the sentence to pay your fine is stayed pending appeal, the court shall require:

1. That you deposit the entire fine amount (or the amount due under an installment schedule during the time of your appeal) in an escrow account with the U.S. District Court Clerk, or

2. Give bond for payment thereof.

18 U.S.C. § 3572(g)

PAYMENTS

If you are ordered to make payments to the U.S. District Court Clerk's Office, certified checks or money orders should be made payable to the Clerk, U.S. District Court and delivered to the appropriate division office listed below:

| | |
|---|---|
| LOUISVILLE: | Clerk, U.S. District Court<br>106 Gene Snyder U.S. Courthouse<br>601 West Broadway<br>Louisville, KY 40202<br>502/625-3500 |
| BOWLING GREEN: | Clerk, U.S. District Court<br>120 Federal Building<br>241 East Main Street<br>Bowling Green, KY 42101<br>270/393-2500 |
| OWENSBORO: | Clerk, U.S. District Court<br>126 Federal Building<br>423 Frederica<br>Owensboro, KY 42301<br>270/689-4400 |
| PADUCAH: | Clerk, U.S. District Court<br>127 Federal Building<br>501 Broadway<br>Paducah, KY 42001<br>270/415-6400 |

If the court finds that you have the present ability to pay, an order may direct imprisonment until payment is made.

FORM DBD-34
JUN.85

No.  1:15CR-23-GNS

# UNITED STATES DISTRICT COURT
Western District of Kentucky
Bowling Green Division

THE UNITED STATES OF AMERICA

vs.

CLAY SHELTON

## SECOND SUPERSEDING INDICTMENT

**Titles 18 U.S.C. §§ 1343; 1957;**
**Title 15 U.S.C. §§ 78j(b); 78ff.**
Wire Fraud; Money Laundering; Securities Fraud.

*A true bill.*

**REDACTED**

_____ / _____
                                *Foreperson*

*Filed in open court this 8th day of March, 2017.*

_____ *Clerk*

*Bail, $*